17-0736 Javier Moreno v. Not Just Grass, Inc May I proceed? May I please report, counsel? My name is David Flores. I'm from Steve's office. I'd like to make a reference to the plaintiff's appellant, Mr. Javier Moreno. We've got a very simple question at hand for us. The question is, did Mr. Moreno sustain a work injury arising out of his employment? The facts at hand are not in dispute. Mr. Moreno is a landscaper. While at work, he ran out of gas, went to the trailer, bid over to pick up a gas can in order to leave a painting. His employer testified that his employees were required to lift gas can refill machinery in order to fill their needs. I think every expert agrees. I think Javier Moreno is doing a great job. Counsel, can I stop you there and just ask you about the standard of review? I think both you and the appellee have agreed that we should apply the standard of review. Is that right? Well, I was struggling with that question. In reading the case law, you made clear that question as far as writing out of the manifest way of the question. So both the cases that were presented, the background was somewhat in dispute. Well, let me just say, in your brief, you wrote, the issue at hand is the commission and circuit court's misapplication of the law. And then you suggested a no vote standard of review. That's my position. And I would submit that even assuming that we use that manifest way, our request for review does mean that the position of the commission was against the manifest way of evidence. Let me just suggest to you that in terms of the analysis here, the commission appropriately, the arbitrator and then the commission appropriately reviewed the risk in this case, according to this Court's case law, determining whether it was a risk distinctly associated with employment, a neutral risk or a personal risk. Is that your assessment as well? I think they laid out the three types of risk, but our position that they incorrectly found that this was a neutral risk. All right. They examined the facts. They made a determination that bending over, not lifting the can, but bending over to lift the can did not constitute a risk distinctly associated with claimant's employment. Is that right? That's the position that they took. All right. Why should we not afford the commission's decision deference? Why would we look at it from a de novo standpoint? Well, I will submit to you that my original position is that it was a de novo review because the facts, specifically what happened in the case itself, is not disputed. But regardless of that, under the mandatory evidence review, this particular case, you have the employer testifying. Not only is he, as in the stake and shake case, not only is he testifying as to what his work duties are, the employer testified as to what the work duties are. And he specifically testified that he would expect his employers to have to bend over and pick up gas cans. So in finding this to be a mutual risk, I would find that to be against the mandatory evidence because there's a purpose stated by both the employer and the employee. Well, the commission has to make a determination as to what the job entailed, what the claimant's employment required. And then they have to make a determination as to whether or not the injury-causing mechanism was a risk that was distinctly associated with the claimant's employment, right? When it goes through that risk analysis. And in making its determination here, the commission was presented with evidence as to what the exact movement was that the claimant engaged in. Simply bending over, they made the determination that that did not constitute a risk distinctly associated with his employment. How is that against the manifest weight of the evidence? Well, I was willing to do that based upon his testimony. He was required to lift the gas can. If he had been injured lifting up the gas can after he bent over, your argument would have a lot of weight. But in this particular case, he didn't lift up the gas can. He testified he never touched the gas can. He hurt himself as he bent over. So it's the act of bending now. It's not the act of lifting that is the injury-causing mechanism. Well, I would submit to you that it's inherent that in order for him to perform his work duties, he would have to bend over or he wouldn't be able to perform his work duties. But how is bending over peculiar to what he does? People bend over all the time. You probably bend over when you're in your office getting a file. Well, in many of the prior oral arguments in this particular case, all of the analysis was presented of the individual who has to bend over to pick up trash. And then the question was asked whether if he has to bend over to pick up trash, is that work-related? Is that arising out of it? And I would submit to you that this fact pattern is analogous to that in Gunn. It's analogous to that in Biddy. It's analogous to that in State. But I think all those cases are distinguishable. And one of the key distinguishing features is that it is the commission's determination that is key here. So if the commission, in the course of its analysis here, determining if it was a risk distinctly associated with employment or a neutral risk or a personal risk, agreed with you and determined that this was a risk distinctly associated with employment, then an opposing counsel would be tasked with arguing that that determination was against the manifest weight of the evidence. However, these are the tough decisions that the commission must decide. And here on appeal, we just simply must look to see whether or not that determination as to risk was against the manifest weight of the evidence. And I said you would acknowledge a high burden. It is a high burden. But I would submit to you that the testimony, once again, of the employer and the employee testifying as to what his work duties are, it's inherent that he is unable to perform his work duties without bending over to pick up his gasket. He's out of gas. There's nothing he can do. Wait a minute. That would be true of the act of walking. And you wouldn't suggest to us that the act of walking, just the bare act of walking, is an employment-related risk that entitles somebody to compensation if they fall down. I think your question is the purpose of walking. Well, I mean, we all walk. You walk at work. If you trip and fall and it has nothing to do with any defect in your employer's premises, that's not compensable. In this particular case, the bending is no different than the walking. He bends over. It's unlike young. He's not required to reach into something and twist his body up to get in there. So I don't understand how it is that the commission could not go at it in a neutral risk analysis to determine whether there's something quantitatively or qualitatively different about this act that brings it into the realm of a compensable injury. Did you put any evidence, or is there any evidence in the record, that specified the frequency at which he was bending over in the course of his day? There's no specific discussion as to the frequency of the impact. That was in Mitnick, so that's a distinguishing feature. Here we don't have that. But in Mitnick, he specifically stated that if it's established that the act performed was an employment-related risk, a neutral risk analysis is not necessary. Right. What did the commission do in Mitnick? Did they find that there was a risk distinctly associated with his employment? In Mitnick, they did find that the act bending over to pick up the bolt was an act peculiar to his employment. So we affirmed in Mitnick finding that it wasn't against the manifest weight. No, it's good to do that in your most recent decision to state this shape. The commission had found on a neutral risk analysis that whacking down tables, and it was a neutral risk, and then they specifically found it under a neutral risk analysis theory. On appeal, this matter was affirmed as far as our ultimate decision. However, you specifically noted that because whacking down tables was a movement inherent in third-degree tables, was a movement which was required by our authorities, you specifically stated that the neutral risk analysis was not necessary. Was there a dissent in that case? There was a dissent. Anyone we know? On the analysis. Correct. Okay. Which was saying? The position in the dissent was that if it's a movement, if it's an everyday movement that everybody performs, then even though it's an employment-related risk, a neutral risk analysis would be necessary. Now, it's admitted that that's creating a third category of risk, an everyday activity that you perform in purpose of your workplace. So under that analysis... That's not a neutral risk? I'm so sorry. I didn't understand your question. That's not neutral risk? Well, yeah. I think if you do find that, then that goes against the prior decisions in Don Young's statement shape, or, I guess, in Don Young's amendment where you specifically state that the first step in the analysis is to determine whether it's an employment-related risk. Once you've established that the movement is an employment-related risk, a neutral risk analysis is necessary. So, I mean, had I was... Well, here, so here, what's your argument? That the Commission did the wrong analysis? Our position is that the Commission found this to be a neutral risk. My position is that in line with the findings of Don Young, and then it can stay in shape until we're decided subsequent to our appraisal hearing, this coordinate has stated that the first step is the determination of whether the risk is an employment-related risk. And I would submit to you that because, once again, of the testimony of my client and his employer, which state that he is reasonably expected to perform the duty of bending over big gas cans, then that's an employment-related risk in the neutral risk analysis. You're saying it's a risk peculiar to his job duties. Correct. But is bending over peculiar to somebody's job duties? It's a mere act of bending over. Well, I think this is also analogous to the finding in an automatic way that the individual who was reaching for a bar of soap, everybody reaches, but she was reaching for the bar of soap to further the duties. I understand your concern that there are cases that involve physical acts that the Commission found to be compensable, but here they visualize it. But the Commission is a fact finder. It's an original fact finder. This is no different than in negligence cases where one jury might find on a fact pattern, a defendant negligent, and a different jury on the same fact pattern finding the defendant not negligent. It's the Commission's prerogative to make these determinations. It's only our prerogative to determine whether it's against the manifest with the evidence. It's all about finding lines, drawing lines, and that's where we're at. It's a difficult issue. We acknowledge that. Judge Roberts, in the negligence cases, you're going to have evidence to support both positions. In this particular case, all the evidence supports a position that my client bent over in furtherance of his work duties, and this is supported by the authority. But that's not the standard. In furtherance of his work duties, there you're bringing in many more things than what would be contemplated by a risk distinctly associated with employment. Got it? You would say that anything that happens during the course of the work day, regardless of the body of movement, whether it's walking, whether it's stooping, bending, whatever it might be, you could make the argument it's in furtherance of the individual's employment. But is it distinctly associated with the individual's jobs? That's what the focus has to be on. I understand that. And I would just admit to you that in the prior cases, which I find to be directly on point, the Don Young, the Mitnick, it's the issue. Wait a minute. But you ignore stuff from Young. Young, it wasn't merely the act of bending over. It was the act of going after Boltz. In a container, it almost forced him to bend into it. There's nothing natural about that. In Mitnick, it was repetitive. It was quantitative. He had to bend over for these Boltz constantly when he was injured. So in Mitnick, it's a neutral risk, but it's compensable because of the quantitative nature of the action. In Young, it just wasn't a natural bending over. Judge, I would submit to you that in regards to Mitnick, if you're analyzing the amount of times he has to bend over, then you're going against the prior cases where you've indicated that once you've established it's an employment-related risk, that you can risk it. Yeah, but counsel, if you were correct, walking is an employment-related risk. Everybody has to walk at work. Your argument doesn't hold water. If the act of bending over is a natural act that everybody does on a regular basis, the fact that you do it during your daily work does not make it an employment-related risk. It will if you have to do it a lot, Young, or Mitnick. It will if you've got to bend into some type of a crazy container like Young. But the mere act of bending, yeah, it's employment-related, but it's not an employment-related risk. Okay. The most recent case stated that the lower level specifically found this to be an employment- on a neutral risk analysis, and they took into account their effectiveness. But this court specifically stated that once you establish that the movement, which was wiping, was work-related, then you don't need to analyze the amount or the times or the way she was doing it. It was an employment-related movement. And I think that that's the reason we're struggling here. We're dealing with the very deficient at the commission level, especially in the field that you go- you specifically overturn the basis of the decision and state the shame. I find myself struggling to determine whether some of these were related. Understandable. You'll have time in reply. Thank you. Counsel may respond. My name is John McGarrett for the defendant, Emily. It's apparent that it's the position of the plaintiff that because the plaintiff's job required them to get some equipment from time to time, that any activity during the course of the workday, arguably an interview in furtherance of the gassing test, is part and parcel of the employment, and an injury sustained in any way in the process arises out of the employment. As a matter of law, this thing was presented to the court. As a question of law, certainly there's more than enough evidence in the record to support the commission's decision, and it's not against the manifest weight of the evidence. I didn't read it that way because it wasn't presented that way. Maybe I should have. Petitioner's plaintiff's theory also includes injuries allegedly sustained while plaintiff was performing a neutral maneuver, merely bending over to his right in a rather innocuous manner that we all do multiple times every day in the course of our daily lives. There are, of course, serious flaws in his argument. Namely, plaintiff, by his own admission, never actually lifted or even tried to lift the gas can herein. He did nothing more than bend over to his right and felt his back pop when he reached for the can. And then, with his hand on the handle of the can, he felt his body, quote, get tight, close quote, with back pain. This history is corroborated by the report of the defendant's independent medical examiner, Dr. Ross, and so on. In summary, this case, I think, is an outpouring of the Newman case. And I think this court has carved out its own exception. In the Midgett case, and I understand the reasoning, and I agree with it, I think that this should be inferred. What about his argument, his stake and shake? How is stake and shake different from this? I'm not aware of it, Judge. In that particular case, it was wiping. I'm sorry? In that particular case, the act was wiping, wiping off tables. Well, if it's quantity, I think that case would be a qualitative round. A quantitative. The more particular the activity is to the employment, the more a otherwise neutral event becomes potentially compensable. I don't think that's inconsistent. Thank you. Thank you, Counsel. Counsel may reply. Oh, okay. I don't believe we do. Thank you. Thank you, Counsel, both for your arguments in this matter. You're taken under advisement. The written disposition shall issue. The court will stand in brief recess.